United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

ANN CONSTANTINO,

        Plaintiff,

    v.

SOUTHERN HUMBOLDT UNIFIED
SCHOOL DISTRICT, et al.,

        Defendants.

Case No.  18-cv-02249-RMI

**ORDER RE DEFENDANTS' MOTION
TO DISMISS FIRST AMENDED
COMPLAINT**

Re: Dkt. No. 27

      Defendants Southern Humboldt Unified School District, Catherine Scott, and Colleen

O'Sullivan ("Defendants") move to dismiss Plaintiff Ann Constantino's First Amended

Complaint.  (Doc. 27).  Plaintiff opposes the motion.  (Doc. 30).  For the reasons set forth below,

the court will grant Defendants' Motion.

## LEGAL STANDARD

      A complaint must contain a "short and plain statement of the claim showing that the

pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  While Rule 8 "does not require 'detailed factual

allegations,'" a complaint "must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57, 570 (2007)).  Facial plausibility is

established "when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Id*. Thus, a Rule 12(b)(6)

motion seeking dismissal for failure to state a claim is proper when there is either "a lack of

cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal

theory."  *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990); *see also,*

*Conley v. Gibson*, 355 U.S. 41, 45–46 (1957); and *De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978). In ruling on a motion to dismiss, courts may consider only "the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Metzler Inv. GMBH v. Corinthian Colleges, Inc*., 540 F.3d 1049, 1061 (9th Cir. 2008). When matters outside the pleadings are presented on a Rule 12(b)(6) motion and are not excluded by the court, the court must convert the Rule 12(b)(6) motion to a Rule 56 summary judgment motion. Fed. R. Civ. P. 12(d).

## FACTS ALLEGED IN FIRST AMENDED COMPLAINT

Southern Humboldt Unified School District ("SHUSD") provides elementary and secondary education to numerous students. *See First Amended Complaint "FAC"* (Doc. 25) at 4. Plaintiff worked for approximately seventeen years at SHUSD as a Student Service Technician ("SST"). *Id*. At the time of the events described herein, she was a classified permanent employee with legal rights to continued employment. *Id*. Plaintiff has received consistently good performance evaluations and has never been formally disciplined except where otherwise specified herein. *Id*.

In or around September 2015, SHUSD hired Defendant Colleen O'Sullivan as a school counselor. *Id*. This was not a supervisory position and Defendant O'Sullivan had no supervisory power pursuant to her job description. *Id.* Defendant O'Sullivan was never Plaintiff's supervisor. *Id.* Defendant O'Sullivan is the daughter of the President of SHUSD's school board. *Id*.

In the Fall of 2015, Plaintiff met with a student and her mother because the student planned to spend a semester abroad in New Zealand beginning in January 2016. *Id*. In or around late 2015, rumors were spread about possible layoffs of SSTs. *Id.* In December 2015, Defendant Catherine Scott sent an email to Plaintiff and another SST, Donna, stating unequivocally that the SHUSD was "in the black" for the first time in a long time and that there would be no layoffs. *Id.*

In January 2016, the student's mother asked Plaintiff about independent study English packets that she was to get from an English teacher named Bill Richards. *Id*. However, although unknown to Plaintiff and Defendant O'Sullivan at the time, shortly before leaving for New Zealand, the student decided not to take any independent study work with her while abroad in

New Zealand. *Id.*

In February 2016, Plaintiff had conversations with Defendant O'Sullivan regarding this student and the independent study work. *Id.* Both Plaintiff and Defendant O'Sullivan at this time still believed that the student had been given independent study work. *Id.* Defendant O'Sullivan expressed concerns about this because, according to Defendant O'Sullivan, it was illegal to give independent study work to an unenrolled student. *Id.*

Despite the fact that Defendant O'Sullivan was not a supervisor, in February 2016, Defendant O'Sullivan began directing Plaintiff to perform certain tasks by repeatedly instructing Plaintiff to contact the student's mother to ensure there were no misunderstandings regarding independent study credit. *Id.* at 4-5. Plaintiff made numerous attempts to contact the student's mother. During one of those attempts, Plaintiff was informed by family that the mother was in New Zealand with her daughter and was unavailable. *Id.* at 5. When Plaintiff reported her difficulty getting in touch with the mother to Defendant O'Sullivan, Defendant O'Sullivan did not believe Plaintiff and began treating Plaintiff as though she was defying orders. Defendant O'Sullivan instructed Plaintiff to "[c]all [the student's mother] every day until you get her." *Id.*

In a separate phone conversation with Plaintiff shortly thereafter, Defendant O'Sullivan used the term "pushback" to describe Plaintiff's attitude. *Id.* Plaintiff then stated that Defendant O'Sullivan was making her uncomfortable and questioned whether Defendant O'Sullivan had any supervisory powers over her. *Id.* Defendant O'Sullivan replied to that by indicating she had "just gotten that clarified a few days ago," falsely suggesting that she was, in fact, Plaintiff's supervisor. *Id.*

Defendant O'Sullivan first took her concerns over this independent study issue, which concerns were based on a false assumption, to the Principal. *Id.* The Principal indicated that he did not believe this to be a serious matter, and indicated that he was not going to take any action. *Id.* Unsatisfied with this, Defendant O'Sullivan then took her concerns to Defendant Scott. *Id.* Due to the high-level nature of Defendant Scott's position (*i.e.* Superintendent), Defendant Scott ordinarily would not involve herself in such matters. *Id.* But in this instance, Defendant Scott declined to refer the matter to Plaintiff's supervisor or any of the other administrators. *Id.* Instead,

Defendant Scott concluded that O'Sullivan, the daughter of the President of the School Board, wanted Plaintiff gone and Defendants Scott and O'Sullivan colluded to cause the termination of Plaintiff's employment. *Id.* To that end, Defendant Scott instructed O'Sullivan to issue disciplinary action in the form of two written reprimands to Plaintiff. *Id.*

On March 1, 2016, Defendant O'Sullivan called Plaintiff into a meeting with a union representative and issued two written reprimands. *Id.* at 6. The first written reprimand concerned the independent study issue, and accused Plaintiff of breaking the law and putting SHUSD at risk by providing independent study work to an unenrolled student. *Id.* The second reprimand concerned a conversation from the previous year (November 2014) between Plaintiff and a student wherein Plaintiff advised the student that the school could write the student a letter certifying her fluency in her native language which would exempt her from having to take 2 years of foreign language in high school, but would not disqualify her from attending a 4-year college that requires 2 years of high school level foreign language instruction for admissions. *Id.* The second reprimand accused Plaintiff of having provided false information to this student in the November 2014 conversation, when in fact the information Plaintiff provided the student was true and accurate. *Id.* In addition to being false, the second reprimand was issued more than one year after the occurrence of the allegedly inappropriate conduct. *Id.*

By the time of the meeting on March 1, 2016, between Defendant O'Sullivan, Plaintiff, and the union representative, Plaintiff had discovered that the foreign exchange student had not, in fact, taken any independent study work with her. *Id.* During that March 1st meeting, Plaintiff explained the misunderstanding and pointed out the various falsehoods and inaccuracies in the two reprimands. *Id.* Plaintiff also presented Defendant O'Sullivan with evidence that her statement to the student about foreign language requirements was true. *Id.* On March 3, 2016, Defendants caused these two false written reprimands to be placed in Plaintiff's personnel file without correction. *Id.*

Because Defendant O'Sullivan issued the reprimand, any appeal would go to the Principal, Jim Stewart. *Id.* at 7. In mid-March 2016, Plaintiff sought to appeal the falsified reprimands to Mr. Stewart. *Id.* Mr. Stewart advised that his boss, Defendant Scott, had instructed that he should

1  not discuss the matter with Plaintiff nor should Plaintiff discuss the matter with him. *Id*. Plaintiff

2  then submitted a written appeal contesting the false writeups to Mr. Stewart. *Id*. Mr. Stewart

3  advised that he knew the write-ups were unfounded, but stated he was not in a position to do

4  anything about it because he feared retaliation from Defendant Scott. *Id*. He stated, in reference

5  to Defendant Scott, that "she can make my life hell." *Id*.

6      Defendant Scott knew that Plaintiff was appealing the false reprimands prior to March 25,

7  2016. *Id*. Prior to March 25, 2016, Defendant Scott had been provided with sufficient

8  information and evidence indicating that the write-ups were false such that she either knew the

9  reprimands were false or had serious doubts about their truth. *Id*.

10     On March 25, 2016, Defendant Scott called Plaintiff and the other classified SST,

11  Donna, into a meeting with a union representative to inform them that she would be asking the

12  school board to lay them off. *Id*. This directly contradicted Defendant Scott's December 2015

13  email described above. *Id*. In order to layoff Plaintiff, Defendant Scott also had to layoff the other

14  SST, Donna, because Donna had less seniority than Plaintiff. *Id*.

15     On April 14, 2016, the Board of the SHUSD approved the layoffs of Plaintiff and Donna.

16  *Id*. at 8. However, these were not bona-fide layoffs as there was no lack of funding and no lack of

17  work. *Id*. Rather, the layoffs were a pretext to terminate Plaintiff's employment in violation of her

18  rights to continued employment and protection against termination except for cause. *Id*.

19     In the Spring of 2016, Defendants created a new clerical position specifically for

20  Donna at the junior high school. *Id*. Prior to any interviews being conducted for this new position,

21  both Donna and Defendant Scott had made numerous comments indicating that Donna would

22  essentially be a shoe-in for this new position. *Id*.

23     The SHUSD interviewed both Donna and Plaintiff for this new position. *Id*. Plaintiff's

24  interview occurred on June 8, 2016. *Id*. Shortly after the interview concluded, one of the members

25  of the interview panel came to Plaintiff to apologize for what that panel member felt was a pre-

26  determined and unfair process. *Id*. The panel member explained that various members of the

27  panel had made up their minds before the interviews took place that they wanted to hire Donna

28  over Plaintiff. *Id*. The panel member also admitted that in the panel's discussion other members

had made negative comments about Plaintiff not providing a complete application packet that included references. *Id.* These comments were unfair insofar as staff from the SHUSD had informed Plaintiff she need not submit an application for the new position because the SHUSD already had an application from Plaintiff on file from when she originally started working for the SHUSD. *Id.*

In mid to late June 2016, Defendant Scott began pressuring Plaintiff to accept an offer made by Defendant Scott that Plaintiff retire and waive her rights under the California Education Code and the collective bargaining agreement to seek re-employment. *Id.* To entice Plaintiff to take the deal, Defendant Scott offered to post-date Plaintiff's retirement date such that she would be entitled to larger monthly payments and additional health care coverage. *Id.*

Plaintiff did not accept the offer initially, but she ultimately realized she had no realistic option but to enter into early retirement. *Id.* Thus, in summer of 2016 she entered into early retirement with limited rights to re-employment as provided in the California Education Code and the collective bargaining agreement. *Id.* at 9.

On November 23, 2016, Michael Parks, the former Vice Principal of her school, informed Plaintiff that her layoff was illegitimate and not bona-fide. *Id.* Specifically, Mr. Parks advised Plaintiff that the real reason she lost her job was that Defendants Scott and O'Sullivan had conspired to terminate her employment because they simply did not like her and the culture they accused her of having created in the school's counseling office. *Id.* They did not like her or the culture she created, because she opposed being reprimanded or disciplined on false grounds, which conduct she reasonably and in good faith believed was illegal. *Id.*

On February 27, 2017, Plaintiff submitted a written complaint to the SHUSD regarding the above-described conduct. *Id.* At that time, SHUSD did not have a valid California Tort Claims Act form available to the public. *Id.* A true and correct copy of this written complaint was attached to the First Amended Complaint as Exhibit A, and was incorporated by reference. *See id.* at 20-25.

SHUSD accepted the complaint and hired outside counsel to conduct an investigation.

1    *Id.* On August 9, 2017, the investigator issued his report, which substantiated many of Plaintiff's

2    allegations, including the allegation that Defendants Scott and O'Sullivan colluded to get Plaintiff

3    removed for reasons that do not amount to cause, and the allegation that false and unfair

4    accusations were made against Plaintiff in the written reprimands. *Id.* A copy of the report of the

5    investigator was attached to the First Amended Complaint as Exhibit B and was incorporated by

6    reference. *Id.* at 26-31.

7            Upon receipt of the August 9, 2017, report, Plaintiff contacted the SHUSD board seeking

8    reinstatement with back pay. *Id.* SHUSD refused both. *Id.* Instead, on November 27, 2017,

9    SHUSD sent Plaintiff a letter indicating it would permanently remove and shred the two written

10   reprimands from Plaintiff's personnel file. *Id.* at 10. The letter concludes as such, "[t]he District

11   considers your complaint resolved." *Id.*

12           On February 7, 2018, Plaintiff, through counsel, presented a second written complaint to

13   SHUSD regarding the above-described conduct. *Id.* In this instance, Plaintiff's counsel submitted

14   the complaint on a form that was represented as being the applicable designated form for filing a

15   tort claim against SHUSD. *Id.* This form was not made available to the public on SHUSD's

16   website. *Id.* Rather, obtaining it required several communications with staff of SHUSD who spent

17   several days searching for the form before finally providing a copy to Plaintiff. *Id.* The form

18   provided is invalid as it purports to be governed by the laws of the State of Washington (not

19   California, as applicable) and appears to require an attestation that the form was signed in the State

20   of Washington, along with a signature under penalty of perjury of the laws of the State of

21   Washington. *Id.* A copy of Plaintiff's February 7, 2018, tort claim form was attached to the First

22   Amended Complaint as Exhibit C, and was incorporated by reference. On February 16, 2018,

23   SHUSD rejected Plaintiff's second written complaint as untimely. *Id.*

24                                    **DISCUSSION**

25   **First Claim for Relief – Substantive Due Process**

26           Plaintiff contends in her first claim for relief against Defendants Scott and O'Sullivan that

27   she had a constitutionally protected right to continued employment under the Due Process Clause

28   of the Fourteenth Amendment to the United States Constitution. Plaintiff claims that Defendants

could not lawfully terminate her employment without cause, nor could Defendants lawfully terminate her employment without notice of the proposed action, a statement of the reason(s) therefor, and a hearing. Plaintiff claims that Defendants Scott and O'Sullivan conspired to terminate her employment, and acted with deliberate and reckless indifference towards her rights, in violation of her constitutionally protected right to Due Process under the Fourteenth Amendment.

Plaintiff alleges that as the Superintendent of SHUSD, Defendant Scott had significant policy-making authority such that her decisions ultimately determined corporate policy. Plaintiff claims that Defendant SHUSD had a policy, practice, or custom of using a sham layoff procedure in order to terminate employees such as Plaintiff, who the administration wanted out, but could not fire because they had not engaged in any misconduct that would constitute cause for termination.

Defendants move to dismiss Plaintiff's first cause of action to the extent it is based on either substantive or procedural due process. The Due Process Clause prohibits the government from depriving "a person of life, liberty, or property in such a way that . . . interferes with rights implicit in the concept of ordered liberty." *Engquist v. Oregon Dept of Agriculture*, 478 F.3d 985, 996 (9th Cir. 2007) (quoting *Squaw Valley Development. Co. v. Goldberg*, 375 F.3d 936, 948 (9th Cir. 2004)) (ellipsis in original). "A threshold requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution." *Wedges/Ledges of California, Inc. v. City of Phoenix, Ariz.*, 24 F.3d 56, 62 (9th Cir. 1994).

Defendants contend that Plaintiff does not and cannot state a viable substantive due process claim because the facts alleged affirmatively establish that the threshold requirement of a recognized liberty or property interest cannot be met. In *Engquist*, the plaintiff alleged a violation of her substantive due process rights in regard to her employment at a laboratory with the Oregon Department of Agriculture. *Engquist,* 478 F.3d at 991. The case was tried to a jury, after which both parties appealed. *Id*. at 991-92. The appellate court held that Engquist stated a claim on which relief could be granted under substantive due process by alleging that the defendants' actions prevented her from pursuing her profession. *Id*. at 996. It further held, however, that

Engquist's substantive due process claim failed as a matter of law because she did not present sufficient evidence that the defendants' actions were responsible for her inability to pursue her profession. *Id*. at 999.

The *Engquist* court began its analysis by explaining that all of its cases dealing with the substantive due process right to pursue a profession "dealt with government legislation or regulation, and not the acts of a government as an employer, which allegedly prevented the plaintiff from pursuing a specific profession." *Id*. at 997. The court declined to accept the defendants' argument that there should be no substantive due process review of employment decisions, but instead held that "there is substantive due process protection against government employer actions that foreclose access to a particular profession to the same degree as government regulation." *Id*. at 998. The court limited the claim to "extreme cases, such as a 'government blacklist, which when circulated or otherwise publicized to prospective employers effectively excludes the blacklisted individual from his occupation, much as if the government had yanked the license of an individual in an occupation that requires licensure.'" *Id*. at 997-98 (quoting *Olivieri v. Rodriguez*, 122 F.3d 406, 408 (7th Cir. 1997)).

Regarding how much interference with a person's job prospects would constitute a denial of the right to pursue a profession, supporting an occupational liberty claim, the Ninth Circuit Court of Appeals has adopted the Seventh Circuit's standard that a plaintiff must show that the "'character and circumstances of a public employer's stigmatizing conduct or statements are such as to have destroyed an employee's freedom to take advantage of other employment opportunities.'" *Id*. at 998 (quoting *Bordelon v. Chi. Sch. Reform Db. of Trs.*, 233 F.3d 524, 531 (7th Cir. 2000)). "It is not enough that the employer's stigmatizing conduct has some adverse effect on the employee's job prospects; instead, the employee must show that the stigmatizing actions make it virtually impossible for the employee to find new employment in his chosen field." *Id*. Using this standard, the court analyzed the facts as follows:

> In this case, Engquist presented evidence that Defendants made defamatory statements to two or three other people in the industry. In addition, Engquist presented evidence that she was having much difficulty finding a job in the same

field in Oregon, and that such difficulty would likely continue. Engquist, however, did not demonstrate that Defendants' actions caused her job-search difficulties. There was no proof that Defendants' defamatory comments affected opportunities with those clients, or any other possible employer. Even under the substantial evidence standard, there was no evidence that her reputation had been publicly damaged by Defendants such that they reduced her employment options. Instead, it appears that Engquist works in a highly specialized field, and there simply are not many jobs available in that field in Oregon. Because Defendants did not cause this situation, their specific actions have not made it "virtually impossible" for Engquist to find new employment. Therefore, we conclude that Engquist did not present sufficient evidence to sustain her substantive due process claim. Consequently, we reverse the judgment in favor of Engquist on her substantive due process claim.

*Engquist*, 478 F.3d at 999 (internal citations omitted).

In this case, Plaintiff contends for the first time in opposition to the motion to dismiss that she states a viable substantive due process claim because Defendants eliminated her SST position and "she therefore cannot work at all in her occupation absent relocation." *Pl.'s Opp.* (Doc. 30) at 15. As Defendants argue, it is axiomatic that a complaint may not be amended through allegations made in an opposition brief. More importantly however, Plaintiff cites no authority for the proposition that the need to relocate to pursue one's chosen profession can support a substantive due process violation; and, as discussed above, the substance of this claim was rejected in *Engquist.* As stated by the court in *Engquist,* the actions of the defendants must have made it "virtually impossible" for the plaintiff to find new employment. Here, as in *Engquist*, it appears that Plaintiff works in a highly specialized field, and there simply are not many jobs available in that field in Plaintiff's area. Because Defendants did not cause this situation, their specific actions have not made it "virtually impossible" for Plaintiff to find new employment. Thus, this is not an "extreme" case, in which the government effectively "blacklisted" Plaintiff from her chosen profession. The court finds, therefore, that even if Plaintiff were allowed to amend her complaint to include the allegation made for the first time in opposition to a motion to dismiss, and was able to establish by a preponderance of the evidence that because Defendants eliminated her position she is unable to work in her chosen occupation absent relocation, Plaintiff's claim would still fail as a matter of law. Therefore, this claim will be dismissed with prejudice.

**First Claim for Relief – Procedural Due Process**

Defendants move to dismiss Plaintiff's first cause of action against Defendants Scott and

O'Sullivan to the extent it is based on procedural due process.

A Section 1983 claim based upon the deprivation of procedural due process has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3) lack of process. *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). It is well established that "[d]ue process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the [governmental] action and afford them an opportunity to present their objections." *Al Haramain Islamic Foundation., Inc. v. U. S. Dep't of the Treasury*, 686 F.3d 965, 985 (9th Cir. 2012), quoting *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010).

As stated above, Plaintiff claims that Defendants could not lawfully terminate her employment without cause. Plaintiff claims that Defendants Scott and O'Sullivan conspired to terminate her employment, and acted with deliberate and reckless indifference towards her rights, in violation of her constitutionally protected right to Due Process under the Fourteenth Amendment. The only reference in the First Amended Complaint to any potential procedural issue is Plaintiff's allegation that Defendants could not lawfully terminate her employment without notice of the proposed action, a statement of the reason(s) thereof, and a hearing. *FAC* (Doc. 25) at 11-12. There are there no more detailed allegations as to what particular "process" Plaintiff was due. Defendants argue that these allegations are conclusory and fail to meet the plausibility standard set forth in *Iqbal*, 556 U.S. at 678. They stress that the First Amended Complaint affirmatively pleads that Plaintiff "entered into early retirement with limited rights to re-employment as provided in the California Education Code and the collective bargaining agreement." *FAC* (Doc. 25) at 8-9. Preceding this, on March 25, 2016, Defendant Scott "called plaintiff and the other classified SST Donna, into a meeting with a union representative to inform them that she would be asking the school board to lay them off." *Id*. at 7.

In response to Defendants' argument that she has not stated a claim for violation of her right to procedural due process, Plaintiff provides the following:

> Defendants terminated Plaintiff's employment giving her neither notice nor a hearing to which she was legally entitled. Defendants should have notified

11

> Plaintiff they intended to terminate her because O'SULLIVAN did not like her (i.e., the real reason for the termination) and provided her a hearing to respond before terminating her employment. Instead, after one attempt at forcing Plaintiff out by fabricating accusations of misconduct against her and providing her with false and libelous write ups, Defendants concocted a scheme whereby they laid her and the other SST (Donna) off (which was necessary because the other SST had less seniority), and then created a second position specifically for SST Donna, and engaged in a sham hiring process for the new position (with a predetermined outcome) in order to effectively fire Plaintiff and force her into early retirement. In every literal sense, Defendants denied Plaintiff due process. The processes due were notice and a hearing. The process received involved neither.

*Pl.'s Opp.* (Doc. 30) at 13-14. In essence, Plaintiff claims that Defendants laid her off for a reason other than the one Defendants gave her, and that she was entitled to notice of that "real" reason, and an opportunity to be heard in regard to that reason. Plaintiff, however, provides no authority for this entitlement theory under procedural due process. Plaintiff cites *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985), in which a security guard was hired by the Cleveland Board of Education after representing in his application that he had never been convicted of a felony. After discovering that the security guard had actually been convicted of a felony, the Board of Education terminated his employment without giving him an opportunity to respond or otherwise challenge the action. *Loudermill*, 470 U.S. at 535. The security guard sued the Board, claiming that the Ohio state law, which set out the review process for discharged civil servants, was unconstitutional on its face because it did not provide for an opportunity to respond prior to dismissal. *Id*. at 536. The Court held, that "all the process that is due is provided by a pretermination opportunity to respond, coupled with post-termination administrative procedures as provided by the Ohio statute. Because respondents allege in their complaints that they had no chance to respond, the District Court erred in dismissing for failure to state a claim." *Id*. at 547-48. Nothing in this opinion addresses Plaintiff's theory that a due process claim can rest upon the assertion that an employee was terminated based on a pretext. The same is true of Plaintiff's reliance on the decision in *Mancini v. Northhampton County*, 836 F.3d 308, 315-16 (3rd Cir. 2016), where it was held that a career service employee could only be dismissed for just cause,

and had a right to a pre-determination hearing. In that case, the court upheld the lower court's rejection of the County's argument that termination of an employee who was a member of the outgoing political party was exempt from the requirement of pre-determination process. *Id.*

Both of these cases are fundamentally distinguishable because Plaintiff was, who was afforded a hearing prior to being laid off then appealed the decision, and ultimately chose to leave her employment, while retaining the option of re-employment, prior to the decision on the appeal of the two reprimands. Plaintiff alleges that she was laid off and she was afforded a notice and opportunity to be heard when Defendant Scott met with her and her union representative on March 25, 2016. The Board then voted to lay off Plaintiff and another employee at the April 2017 Board meeting. Plaintiff thereafter chose to retire, retaining the right to be rehired.

Plaintiff's assertion that her layoff was "a pretext" and that she was "terminated" for some other, purportedly unlawful reason, is not a procedural due process claim. As Defendants argue, an employer's stated reasons for the layoff are irrelevant to procedural due process claim; otherwise, every adverse action alleged to have been based on reasons not identified by the employer would be a due process violation, regardless of whether the stated reasons for the adverse action support the decision. This issue is discussed in *Kay v. Haack*, No. 3:13-CV-1076-PK, 2014 WL 4220917 (D. Or. 2014), in which the plaintiff claimed that Haack, one of his supervisors, harbored a bias against him. The court noted that it was not the supervisor, but rather the City Council who made the decision to terminate his employment. In determining that the plaintiff received pre-termination process adequate to satisfy the requirements of procedural due process, the court held:

> Moreover, even assuming arguendo that Haack, acting out of bias, manipulated the evidence that the City Council considered in making its termination decision, the Fourteenth Amendment's procedural due process protections do not guarantee that in effecting a deprivation of a property interest the government act on the basis of the best evidence nor even of fairly presented evidence; the Fourteenth Amendment guarantees only notice and an opportunity to be heard by an impartial tribunal, which Kay undisputedly received in connection

13

with his termination.

*Id.* at \*10-11.

Because the stated reasons for Plaintiff's layoff are irrelevant to her procedural due process claim, it would be futile to allow Plaintiff to amend her complaint to include the claim of pretextual termination raised in her Opposition to the Motion to Dismiss. Further, because Plaintiff alleges that she was given notice of her pending layoff and an opportunity to be heard at the meeting, accompanied by a union representative, on March 25, 2016, she has not stated a claim of a procedural due process violation. Thus, having reviewed the parties' arguments, the court concludes that Plaintiff has failed to state a procedural due process claim in connection with being laid off by the School Board. Because amendment would be futile, the court will dismiss this claim with prejudice.

**Second Claim for Relief – First Amendment**

Defendants move to dismiss Plaintiff's second claim for relief under the First Amendment against Defendants Scott and O'Sullivan, in which she alleges "retaliation for exerting her freedom of speech and exercising her right to petition the government regarding false written reprimands." *FAC* (Doc. 25) at 12. Plaintiff claims that she "engaged in activity protected by the First Amendment to the United States Constitution by opposing the false written reprimands and asserting her legal rights to challenge those written reprimands." *Id*.

First Amendment retaliation claims are analyzed under the two-step, five-factor inquiry set forth in *Eng v. Cooley*, 552 F.3d 1062 (9th Cir. 2009). The steps and factors are as follows: first, the plaintiff bears the burden of showing (1) that the speech at issue addressed a matter of public concern, (2) that the speech was spoken in the capacity of a private citizen and not a public employee, and (3) that the government took adverse employment action for which the speech at issue was a substantial or motivating factor; then, if the plaintiff has passed the first three steps, the burden shifts to the government to show that (4) under the balancing test established by

United States District Court
Northern District of California

*Pickering v. Bd. of Educ.*, 391 U.S. 563, 574-75 (1968), the government's legitimate administrative interests outweigh the employee's First Amendment rights, and (5), if the government fails the *Pickering* balancing test, it alternatively bears the burden of demonstrating that it would have taken the same employment action even in the absence of the employee's protected conduct. *Eng*, 552 F.3d at 1070-72.

Thus, to prevail on a First Amendment retaliation claim, Plaintiff must first establish the following: (1) that she spoke on a matter of public concern; (2) that she spoke as a private citizen rather than a public employee; and (3) that the relevant speech was a substantial or motivating factor in the adverse employment action. *See Coomes v. Edmonds School Dist. No. 15*, 816 F.3d 1255, 1259 (9th Cir. 2016). A failure to meet any one of what are called the "*Eng* factors" is fatal to Plaintiff's case, meaning that the court is free to address a potentially dispositive factor first rather than each factor sequentially. *Coomes*, 816 F.3d at 1260; *see also Dahlia v. Rodriguez*, 735 F.3d 1060, 1067 n.4 (9th Cir. 2013) (*en banc*).

Defendants move to dismiss Plaintiff's First Amendment retaliation claim, arguing that she was not speaking on a matter of public concern and was speaking as a school employee, not as a private citizen. Whether the speech addresses a matter of "public concern," as opposed to "personal interest" for purposes of a First Amendment retaliation claim, "is a pure question of law" for the court to decide. *Desrochers v. City of San Bernardino*, 572 F.3d 703, 709 (9th Cir. 2009). "Speech that deals with individual personnel disputes and grievances" that do not bear on the public's evaluation of government functions are not matters of public concern. *Id.* (Internal quotations and citations omitted.) "The same is true of speech that relates to internal power struggles within the workplace, and speech which is of no interest beyond the employee's bureaucratic niche." *Id.* (Internal quotations and citations omitted.)

Thus, the *Desrochers* court concluded that the speech at issue did not meet the "public concern test" because the speech "took the form of internal employee grievances which were not

15

disseminated to the public." *See also Turner v. City & County. of San Francisco*, 788 F.3d 1206, 1212 (9th Cir. 2015) (plaintiff did not engage in protected speech "when he complained to his supervisors about the City's hiring and use of temporary exempt employees"); *Nazir v. County. of Los Angeles*, No. LA CV10-06546 JAK (AGRx), 2011 WL 13217356, at *4 (C.D. Cal. Aug. 3, 2011) ("Plaintiff's complaints about promotion and reassignment are not speech involving a matter of public concern because they are centered on the personal interests of Plaintiff.")

Plaintiff opposes dismissal, arguing initially that Defendants fail to distinguish between the two parts of this claim. She contends that claims under the Speech Clause of the First Amendment differ from claims under the Petition Clause in that the plaintiff in a speech clause case must show that she was acting as a private citizen, but no such requirement exists under the Petition Clause. *See Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 398 (2011) (holding that a government employer's allegedly retaliatory action against an employee does not give rise to liability under the petition clause unless the employee's petition relates to a matter of public concern).

In this case, the court finds it unnecessary to address the issue of whether Plaintiff was acting as a private citizen when she engaged in the speech at issue, because the court finds that she was not speaking on a matter of public concern. *See Coomes,* 816 F.3d at 1260 (The failure to meet any one of the *Eng* factors is fatal to the Plaintiff's case.).

In arguing that her speech addressed a matter of public concern, Plaintiff relies on a district court case from Arizona: *McKee v. Peoria Unified School Dist.*, 963 F. Supp. 2d 911, 916 (D. Ariz. 2013). In that case, the court held that the plaintiff's letter to his school district employer regarding his potential claims for defamation after the employer falsely insinuated that the employee was responsible for the death of a student who died by drowning at the school was protected speech under the First Amendment. *Id*. at 925-26. The court found that although the letter at issue concerned a grievance between the employee and the school district, the content of the letter was a matter of public concern because "[t]he dispute centered on a public school

16

teacher's involvement (or lack thereof) in a student's accidental drowning during school hours and on a school facility. The local community would likely be interested in that subject and the accounts of both sides. The event provides a window through which parents and relatives of public school children could scrutinize those to whom they entrust their love ones." *Id.* at 926. The court found that the letter "described how the district 'neglected and failed to have properly qualified lifeguards on duty' and 'has no policies in place for water safety.'" *Id.* at 926. In light of these facts, the court concluded:

> The District's failure to engage in safety practices and abide by contractual agreements [requiring lifeguards to be present] is a matter of concern for the same reasons as McKee's involvement in the accident. The public would be interested in these subjects, especially in light of the accidental drowning.

*Id.*; *see also DeLarge v. Hayward Unified School District*, No. C 10-01000 JSW, 2001 WL 13244754 (N.D. Cal. 2011) (statements regarding unlawful conduct of school district, as well its management and operation were matters of public concern).

The content of the plaintiff's speech is the "greatest single factor" in determining whether it qualifies as a matter of public concern for First Amendment purposes. *Desrochers,* 572 F.3d at 710. Plaintiff describes the speech at issue as follows: "Plaintiff engaged in activity protected by the First Amendment to the United States Constitution by opposing the false written reprimands and asserting her legal right to challenge them." *FAC* (Doc. 25) at 12. These two reprimands, described in paragraphs 27 and 28 of the First Amended Complaint, were issued to Plaintiff by Defendant O'Sullivan at a meeting with a union representative on March 1, 2016. Plaintiff alleges in the First Amended Complaint that at the meeting, she explained the misunderstanding regarding the independent study work for the foreign exchange student, and "pointed out the various falsehoods and inaccuracies in the two reprimands." *Id.* at 6. She further alleges that she submitted a written appeal contesting the false reprimands to Mr. Stewart, the Principal. *Id.* at 7. This is the description provided by Plaintiff herself of the content of the speech she now claims is

protected by the First Amendment. Plaintiff's post-termination letter to the Board, dated February 16, 2017, attached as Exhibit A to the First Amended Complaint, cannot be a part of the basis for her retaliation claim. *Desrochers*, 572 F.3d at 712 ("We look to what the employee actually said, not what they say after the fact.").

In contrast to the speech at issue in *McKee*, 963 F. Supp. 2d at 916, Plaintiff's speech did not address a matter of public concern such as student safety. Instead, Plaintiff's speech addressed issues personal to her employment, and whether she had provided incorrect information to students. Speech such as this, which deals with individual personnel disputes and grievances and that would be of no relevance to the public's evaluation of the performance of governmental agencies, is generally not of public concern. *Turner v. City & County. of San Francisco*, 788 F.3d 1206, 1211 (9th Cir. 2015). Accordingly, the court will grant Defendants' motion to dismiss as to the second claim for relief with prejudice.

**Third Claim for Relief – Violation of Labor Code Section 1102.5**

Defendants move to dismiss Plaintiff's third claim for relief against SHUSD for violation of California Labor Code Section 1102.5 on the ground that it is barred by Eleventh Amendment immunity. Plaintiff does not provide a substantive argument in opposition, but requests that if the court finds Eleventh Amendment immunity, it remand this claim to state court.

"[I]n the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment. . . . This jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (citations omitted). While California has consented to be sued in its own courts under the California Tort Claims Act, such consent does not constitute consent to suit in federal court. *See BV Engineering v. University of California, Los Angeles*, 858 F.2d 1394, 1396 (9th Cir. 1988); *see also Hupp v. Petersen*, No. ED CV 15-1247-VAP (SP), 2015 WL 9664962, *2 (C.D. Cal. Dec. 2, 2015) (Eleventh Amendment immunity has not been waived by California nor abrogated by Congress).

United States District Court
Northern District of California

The Ninth Circuit has held that in California, school districts are considered arms of the state and are entitled to Eleventh Amendment immunity in federal court, therefore, Plaintiff's state law claims against the School District, raised in the Third and Fourth claims for relief, are barred by the Eleventh Amendment and must be dismissed. *See, e.g., Corrales v. Moreno Valley Unified School. District.*, No. 08-00040-AC, 2010 WL 2384599, at \*9 (C.D. Cal. 2010) (state claim for violation of Labor Code §1102.5 against school district barred by Eleventh Amendment); *Carmen v. San Francisco Unified Sch. Dist.*, 982 F. Supp. 1396, 1406 (N.D. Cal. 1997), aff'd, 237 F.3d 1026 (9th Cir. 2001) (state law claims for defamation in violation of civil rights and intentional infliction of emotional distress against school district barred by Eleventh Amendment).

Remand is a procedure in which a federal court returns a case to the state court in which it originated. *See* 28 U.S.C. § 1441. This case originated in this court, not in state court. (Doc. 1.) Thus, this court has no authority to remand it to state court. Defendants' motion to dismiss will be granted in favor of SHUSD as to Plaintiff's third claim for violation of Labor Code § 1102.5, and the claim will be dismissed without prejudice to Plaintiff's right to refile this claim in state court.

**Fourth Claim for Relief - Defamation**

Defendants move to dismiss Plaintiff's fourth claim for relief, alleging defamation, against all Defendants. In this claim for relief, Plaintiff alleges that Defendants "conspired to, and in fact, did negligently, recklessly and intentionally cause excessive and unsolicited publications of false and defamatory statements, of and concerning [Plaintiff], to third persons." *FAC* (Doc. 25) at 19-21. Plaintiff alleges that these defamatory statements included "accusations that Plaintiff had engaged in dishonesty when telling a student the school could give her a letter certifying her foreign language proficiency and that Plaintiff had broken the law and put SHUSD at risk by allegedly providing another student with independent study work while not technically enrolled in a SHUSD school." *Id*. at 22-16. Plaintiff states that although the precise dates of the defamatory publications are not known, she believes that the publications began "on or after March of 2016." *Id*. at 27-28.

The fourth claim for relief will be dismissed as against Defendant SHUSD based on Eleventh Amendment immunity, as discussed above in reference to the third claim for relief. As

with the third claim for relief, this court has no authority to remand the claim to state court.

Defendants argue that Plaintiff's claim for defamation is subject to dismissal because of Plaintiff's failure to timely present a claim pursuant to the California Tort Claims Act ("CTCA"). Under the CTCA, with limited exceptions not applicable here, "no suit for money or damages may be brought against a public entity . . . until a written claim . . . has been presented to the public entity and has been acted upon . . . or has been deemed to have been rejected." Cal. Gov. Code § 945.4. Failure to present a timely written claim to the relevant public entity "bars a plaintiff from filing a lawsuit against that entity." *City of Stockton v. Superior Court*, 42 Cal. 4th 730, 738 (Cal. 2007). Thus, in state and federal court alike, "[t]imely compliance with the claim filing requirements . . . must be pleaded in a complaint . . . to state a cause of action." *Konig v. State Bar of California*, No. C 04–02210–MJJ, 2004 WL 2091990, at *6 (N.D. Cal. 2004) (internal quotation marks omitted); *see also*, *Dowell v. Contra Costa Cnty.*, 928 F.Supp.2d 1137, 1151 (N.D. Cal. 2013) ("The requirement that a plaintiff must affirmatively allege compliance with the CTCA applies in federal court.") (internal quotation marks omitted). Where the claim "relat[es] to a cause of action for . . . injury to person," the claim must be presented to the public entity "not later than six months after the accrual of the cause of action." Cal. Gov. Code § 911.2(a). "For the purpose of computing time limits [under the CTCA,] the date of the accrual of a cause of action . . . is the date upon which the cause of action would be deemed to have accrued within the meaning of the [applicable] statute of limitations." Cal. Gov. Code § 901.

Defendants contend that the two reprimands were "published" when they were provided to Plaintiff on March 1, 2016, and placed in her personnel file on March 3, 2016, as alleged in the First Amended Complaint. *FAC* (Doc. 25) at 6. Defendants argue that Plaintiff's February 16, 2017, correspondence to SHUSD was untimely under the CTCA, as it was sent more than six months after March of 2016. Plaintiff responds, however, that Defendants waived the argument that the February 2017 correspondence was untimely, and, further, that the correspondence substantially complied with the CTCA. Regarding waiver, Plaintiff argues simply that Defendants waived the argument that her February 2017 "tort claim" was untimely by "choosing to accept the late claim and proceed with an investigation." *Pl.'s Opp.* (Doc. 30) at 20. As to substantial

compliance, Plaintiff argues that the only information set forth under the statute that was missing was her address, and Defendants had that because she had been their employee. The court notes initially that to the extent it is offered as a purported claim under the California Tort Claims Act regarding the reprimands of March 2016, Plaintiff's February 2017 email correspondence to SHUSD was clearly untimely.

In support of her waiver argument, Plaintiff cites California Government Code Section 911.3(b), which provides:

> (b) Any defense as to the time limit for presenting a claim described in subdivision (a) is waived by failure to give the notice set forth in subdivision (a) within 45 days after the claim is presented, except that no notice need be given and no waiver shall result when the claim as presented fails to state either an address to which the person presenting the claim desires notices to be sent or an address of the claimant.

Here, the February 2017 email did not contain either an address to which Plaintiff asked for notices to be sent or Plaintiff's own address. The alleged fact that SHUSD had her address is irrelevant, as that is doubtlessly true in the vast majority of CTCA claims.

California Government Code § 910 requires that the claim presented to the public entity include the following information: (a) the name and post office address of the claimant; (b) the post office address to which the person presenting the claim desires notices to be sent; (c) the date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted; (d) a general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of presentation of the claim; (e) the name or names of the public employee or employees causing the injury, damage, or loss, if known; and (f) the amount claimed if it totals less than ten thousand dollars ($10,000) as of the date of presentation of the claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of computation of the amount claimed. If the amount claimed exceeds ten thousand dollars ($10,000), no dollar amount shall be included in the claim. However, it shall indicate whether the claim would be a limited

civil case. California Government Code section 910.2 provides that "[t]he claim shall be signed

by the claimant or by some person on his behalf." Cal. Gov. Code § 910.2. The purpose of the

CTCA, is "not to prevent surprise, but to provide the public entity sufficient information to enable

it to adequately investigate claims and to settle them, if appropriate, without the expense of

litigation." *DiCampli–Mintz v. County of Santa Clara*, 55 Cal. App. 4th 983, 991 (Cal. App. 2012)

(citations omitted).

The court finds that the February 16, 2017, correspondence fails to substantially comply

with the requirements established in § 910. This correspondence, found at Exhibit A to the First

Amended Complaint, appears to be a copy of an email. It contains no address as to whom it was

sent, no address from the sender and, most importantly, no "description of the indebtedness,

obligation, injury, damage or loss incurred." A claim must sufficiently comply with each of the

statutory requirements. *City of San Jose v. Superior Court*, 12 Cal. 3d 447, 456-57 (Cal. 1974)

(substantial compliance doctrine does not apply when essential element is missing from claim);

*Loehr v. Ventura County Community College Dist*. 147 Cal. 3d 1071, 1083 (Cal. 1983) ("The

doctrine of substantial compliance . . . cannot cure total omission of an essential element from the

claim.").

The court must agree with Defendants that there is nothing about this communication

that would have alerted the District that Plaintiff was asserting a claim for damages. The stated

purpose of the correspondence was not to make a Government Tort Claim for damages, but was in

furtherance of  ". . . the best interests of CSEA and SHTA unit members as well as the students of

our district . . ." "[b]ecause I no longer have anything to lose I can afford to speak out where

others, who may fear for their jobs, but have been treated in similar fashion, would not feel safe in

doing so." (FAC, Exhibit A.) "The doctrine [of substantial compliance] is based on the premise

that substantial compliance fulfills the purpose of the claims statutes, namely, to give the public

entity timely notice of the nature of the claim so that it may investigate and settle those having

merit without litigation." *Connelly v. County of Fresno,* 146 Cal. App. 4th 29, 38, 52 (Cal. App.

2006). Because there is no claim for money or damages in the letter, there was no reason for the

District to consider "settlement" over "litigation."  The court therefore concludes that Plaintiff's

communication of February 2017 did not substantially comply with the CTCA and therefore did

not constitute a claim under the CTCA.  Plaintiff has presented no authority in support of her

argument that by investigating her claims, Defendants waived the requirements of the CTCA.  The

court finds no merit to the argument that by investigating claims by an employee of improper

actions by a government employer, the employer has waived the legal requirements for the

employee to proceed with a personal action for damages.  This is particularly true where, as here,

the form in which the claims were presented utterly failed to comply with the legal requirements

under the CTCA.

Finally, Plaintiff argues that her defamation claim survives by virtue of the claim

form allegedly presented to the District on February 7, 2018, because the August 9, 2017,

"Confidential Report Subject to The Attorney Work Product and Attorney-Client Privilege"

amounted to a defamatory "republication," citing *Di Giorgio Corp. v. Valley Labor Citizen*,

260 Cal. App. 2d 268 (Cal. App. 1968). In that case, a defamatory article was published in a local

newspaper then sent to another newspaper which republished it. The court of appeal held that

the defendant could not be liable for the republication because the defendant (the author of the

article) had not "authorized, consented to, or participated in the republication of his article." *Di

Giorgio*, 260 Cal. App. 2d. at 272.

Here, there are no allegations that either Defendant O'Sullivan or Defendant Scott

"authorized, consented to, or participated in the republication." Accordingly, there is no basis for

liability for on the part of those Defendants for the purported "republication." As found above, the

only other Defendant, SHUSD, has Eleventh Amendment immunity from suit.  Further, the report

is labeled "Confidential" and "Privileged" attorney-client work product. *FAC* (Doc. 25) at 37-41.

No facts are alleged that this was "published" to the general public as in *Di Giorgio*. Nor are they

any allegations that the contents of the confidential report were published on a prior occasion.

Because it may be possible for Plaintiff to amend her complaint to state a claim for defamation

against Defendants O'Sullivan or Defendant Scott, the court will dismiss this claim without

prejudice as to those two Defendants.  However, the court has determined that it must grant

Defendants' motion to dismiss as to all of Plaintiff's claims over which it has original jurisdiction, *i.e.*, claims 1 and 2. Therefore, the court will exercise its discretion to decline to exercise supplemental jurisdiction over Plaintiff's fourth claim for relief against Defendants O'Sullivan and Scott. *See* 28 U.S.C. Section 1367(c)(3).

## CONCLUSION

Based on the foregoing, IT IS HEREBY ORDERED that

1) Defendants' motion to dismiss is GRANTED as to Plaintiff's first claim for relief for substantive due process. This claim for relief is DISMISSED with prejudice.

2) Defendants' motion to dismiss is GRANTED as to Plaintiff's first claim for relief for procedural due process. This claim for relief is DISMISSED with prejudice.

3) Defendants' motion to dismiss is GRANTED as to Plaintiff's second claim for relief for violation of her First Amendment right to free speech. This claim is DISMISSED with prejudice.

4) Defendants' motion to dismiss is GRANTED as to Plaintiff's third claim for relief alleging a violation of California Labor Code Section 1102.5 against SHUSD. This claim for relief is DISMISSED without prejudice to Plaintiff's right to refile this claim in state court.

5) Defendants' motion to dismiss is GRANTED as to Plaintiff's fourth claim for relief alleging defamation against all Defendants. The claim for relief is DISMISSED without prejudice to Plaintiff's right to refile the claim in state court.

6) This case is DISMISSED. The Clerk is directed to close the case.

7) A separate judgment will issue.

**IT IS SO ORDERED.**

Dated: January 15, 2019.

ROBERT M. ILLMAN
United States Magistrate Judge

United States District Court
Northern District of California